# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ANTOINETTE PIRANT, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 03 C 9383 |
| | ) Judge Joan H. Lefkow |
| UNITED STATES POSTAL SERVICE | ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Antoinette Pirant ("Pirant"), filed an amended complaint against defendant, the United States Postal Service ("USPS"), alleging that she was terminated in violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 *et seq*, for missing work due to a chronic medical condition that is covered by the FMLA. The court's jurisdiction is invoked under that statute. Presently before the court is the USPS's motion for summary judgment. For the reasons stated below, the USPS's motion is granted.

## SUMMARY JUDGMENT STANDARDS

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). To determine whether any genuine fact exists, the court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed R. Civ. P. 56(c) Advisory Committee's notes. The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In response, the

nonmoving party cannot rest on bare pleadings alone but must use the evidentiary tools listed above to designate specific material facts showing that there is a genuine issue for trial. *Id.* at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). A material fact must be outcome determinative under the governing law. *Insolia*, 216 F.3d at 598-99. Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the court must construe all facts in a light most favorable to the nonmoving party as well as view all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

## FACTS

From March 1993 to January 2002, Pirant was employed by the USPS as a mail handler, working the night shift first at the USPS's O'Hare facility and then at its Busse facility. USPS's Local Rule 56.1 Statement of Material Facts ¶ 1, hereinafter USPS ¶ __. During that time, Pirant accumulated several unexcused absences. *Id.* ¶¶ 2-12. As a result, Pirant received a number of disciplinary sanctions, including multiple suspensions. *Id.*

On March 29, 2000, Pirant was given a long-term suspension for failing to maintain a regular attendance record. *Id.* ¶ 10. Pirant remained suspended until March 15, 2001 when she returned to work under what the USPS termed a "Last Chance Agreement" ("the agreement"). *Id.* ¶ 12. Under the agreement, Pirant was required, among other things, to maintain satisfactory attendance, which meant no more than three unscheduled absences and no instances of AWOL, or absent without official leave. *Id.* ¶ 13.

During that spring and summer, Pirant had several unscheduled absences. *Id.* ¶¶ 14-17. On July 17, September 2 and September 3, Pirant was absent due to an alleged illness. *Id.* On

August 14, 2001 and September 25, 2001, Pirant was AWOL. *Id.* For these latter absences, Pirant did not claim then, nor does she now, that they were anything other than unexcused. *Id.*

On September 28, 2001, Pirant was notified of her removal from employment because of her absences and for other violations of the agreement. *Id.* ¶ 18. On October 26, 2001, however, Gerald Kubick, plant manager of the Chicago Airmail Center and the Chicago Metro Surface Hub, at Pirant's request, placed her removal in abeyance for 45 days. *Id.* ¶ 19. The abeyance agreement, initialed by both Kubick and Pirant, stipulated:

> "Hold in abeyance for 45 days 12/10/01. Must not have any further unsched. absences. No conduct issues. No work perf. issues. Agree only to discuss in 45 days."

*Id.* The abeyance agreement further provided that Pirant could still be removed for the violations of the agreement even if she maintained perfect attendance during the 45 day period her removal was held in abeyance. *Id.* ¶ 20.

On December 5, 2001, at 10:30 p.m., three hours before her next shift was to begin, Pirant called in an unscheduled absence. *Id.* ¶ 21. She returned to work on December 7, 2001, and remained employed until January 4, 2002, when the USPS again issued her a notice of removal, thereby terminating her employment. *Id.* ¶ 25.

An arbitrator denied Pirant's union grievance on May 6, 2002, holding that the USPS had just cause to remove her. *Id.* ¶ 30. On December 29, 2003, Pirant filed a complaint under the FMLA, which was later amended on February 10, 2004. *Id.* ¶ 31.

On May 26, 2004, the USPS answered Pirant's amended complaint. *Id.* ¶ 37. In its answer, the USPS admitted that Pirant had been employed by the USPS for at least 1,250 hours in the 12 months prior to the commencement of her leave. *Id.* ¶ 38. On June 24, 2005, the

USPS was given leave to file an amended answer. *Id.* ¶ 40. In the amended answer, the USPS denied that Pirant had worked at least 1,250 during that period. *Id.*

## DISCUSSION

Congress enacted the FMLA in part "to entitle employees to take reasonable leave for medical purposes." 29 U.S.C. § 2601(b)(2). The FMLA provides "eligible employees" of a covered employer the right to take unpaid leave of up to 12 work weeks in any 12 month period for a "serious health condition" as defined by the FMLA. *Id.*; *see* 29 U.S.C. § 2612(a)(1). After the period of qualified leave expires, the employee is entitled to be reinstated to the "position of employment held when the leave commenced" or "an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." *Id.*; *see* 29 U.S.C. § 2614(a). To insure the availability of these guarantees, the FMLA declares it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided." *Id.*; *see* 29 U.S.C. § 2615(a)(1).

The USPS contends that Pirant was not an "eligible employee" as defined by the FMLA because she did not work the requisite 1,250 hours during the 12 months prior to the commencement of her desired leave. Under the FMLA, an "eligible employee" is one who has worked for a covered employer for at least 12 months, has worked at least 1,250 hours during the previous 12 months, and has been employed at a worksite where there are at least 50 or more employees within a 75 mile radius. 29 U.S.C. § 2611(2)(A); 29 U.S.C. § 2611(2)(B)(ii). An employee must satisfy each of these criteria independently to be eligible for FMLA leave. 29 C.F.R. § 825.110. Thus, an employee who has less than 1,250 hours of service in the

4

previous 12 month period is not entitled to the protections of the FMLA and may not maintain an action under the Act. 29 C.F.R. § 825.110.[1]

To determine whether an employee has worked the minimum 1,250 hours of service, the FMLA directs courts to examine the principles established under the Fair Labor Standards Act ("FLSA") for determining compensable hours of work. 29 U.S.C. § 2611(2)(C); 29 C.F.R. § 825.110(c). Under the FLSA, "hours worked" does not include time paid, but only time spent working. *Kosakow v. New Rochelle Radiology Associates*, 88 F.Supp.2d 199, 205 (S.D.N.Y. 2000). Specifically, any work hours paid when no work was performed due to vacation, holiday, illness, and other similar causes are not considered "hours of employment" under the FLSA. 29 U.S.C. § 207(e)(2).

If an employer does not maintain an accurate record of hours worked by an employee, the employer has the burden of showing that the employee has not worked the requisite hours. 29 C.F.R. § 825.110(c). "An employer must be able to clearly demonstrate that such an employee did not work 1,250 hours during the previous 12 months in order to claim that the employee is not 'eligible' for FMLA leave." *Id.* "[A]ny accurate accounting of actual hours worked under FLSA's principals [*sic*] may be used." *Id.*

---

[1] In its opening memorandum the USPS also argued that it is entitled to summary judgment because Pirant failed to timely file suit under the FMLA. The argument is unavailing. Under the FMLA, 29 U.S.C. § 2617(c)(1)(3), an action for a violation of the statute must be brought within two years of the last event constituting the alleged violation for which the action is brought. The parties agree that the date of the last event in this case was January 4, 2002, the date when Pirant's employment with the USPS was terminated.

Pirant originally filed suit on December 29, 2003, which was within two years of her termination. The court subsequently dismissed Pirant's complaint with leave to amend, which she did on February 10, 2004. Under Fed. R. Civ. P. 15(c), an amendment of a complaint relates back to the date of the original complaint when the claim asserted in the amended complaint arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original complaint. Since Pirant's amended complaint raised claims based on the same conduct, transactions, and occurrences alleged in her original complaint, the amended complaint related back to the date of the timely filed original complaint. Accordingly, Pirant's suit was timely filed.

It is undisputed that Pirant worked at least 1,248.8 hours in the 12 months prior to the commencement of her leave. Pirant argues, however, that it should be presumed that she worked the requisite 1,250 hours because 1) the USPS admitted in its original answer to her complaint that she did; 2) the USPS failed to count all of her FMLA hours; and 3) if there is any shortfall, it should be disregarded as *de minimis*.

### A. The USPS's Admission In Its Original Answer Is Not Impeaching

Pirant contends that the USPS's admission in its original answer that she had worked more than 1,250 hours in the 12 months preceding the commencement of her leave is sufficient to defeat summary judgment because it would be admissible at trial to impeach the USPS's revised calculation of her FMLA hours. As such, Pirant maintains, the USPS's original answer creates a fact issue as to whether Pirant worked the requisite 1,250 hours.

Pirant relies on *Nisbet v. Van Tuyl*, 224 F.2d 66, 71 (7th Cir. 1955). In *Nisbet*, the Seventh Circuit stated:

> "Upon a motion for summary judgment the court, in considering the pleadings upon which the motion is in part based, considers amended pleadings rather than prior pleadings superseded by the amended pleadings. An amended pleading ordinarily supersedes the prior pleading. The prior pleading is in effect withdrawn as to all matters not restated in the amended pleading, and becomes *functus officio*. Therefore the argument of defendants in this regard is untenable. Upon a trial of the issues raised by the pleadings, including the amended complaint, a complaint superseded thereby might well be offered in evidence by the defense if it contains material admissions by the plaintiffs named in the amended complaint. Such evidence would be admissible in order to enable the court to determine the facts upon the issues being tried. Conversely, upon the trial, plaintiffs would be permitted to show by evidence the explanation, if any there be, as to why the facts relied on by defendants as admissions were stated in the amended complaint differently than the way in which they were stated in the original complaint."

224 F.2d at 71. Superficially *Nisbet* appears to foreclose Pirant's argument, as it expressly precludes consideration of the prior pleading at the summary judgment stage. In *Nisbet*,

6

however, the defendant was attempting to rely on the prior pleading to show the absence of a material fact. Under those circumstances, the rationale for excluding consideration of the prior pleading is clear: to hold otherwise would defeat the plaintiff's right to amend her pleadings. Here, though, no such interest is at stake, because Pirant relies on the USPS's amended answer to show the presence of a material fact issue. Unlike in *Nisbet*, acknowledging the prior pleading in these circumstances is not tantamount to ignoring the amended pleading, since the version of facts in the prior pleading need not be treated as a conclusive judicial admission, but instead as a mere evidentiary admission, which, as the USPS concedes, is how they would be treated at trial. The court therefore finds that *Nisbet* is inapposite and considers the USPS's original answer in resolving its motion for summary judgment.

It is of little consequence, though, because the USPS's prior admission that Pirant had worked the requisite 1,250 hours is insufficient to create a genuine issue of material fact. In this case, whether Pirant worked a sufficient number of FMLA hours is not an issue that depends on the credibility of a witness. As Pirant concedes, the USPS has presented an accurate and objective measure of her FMLA hours: her payroll records. The credibility of the records is not at issue. Thus, the issue is simply whether the hours reflected in her payroll records add up to 1,250. If they do, she is eligible. If not, she is not. Accordingly, the USPS's original answer is insufficient to defeat summary judgment.

## B. The USPS Counted All of Pirant's FMLA Hours

Pirant argues that the USPS undercounted her FMLA hours for three reasons: 1) for every payroll period but one, the USPS relied on the "Paid Hrs" line of her payroll records, which she contends did not capture all of her FMLA hours; 2) it failed to count two hours she lost when her

7

supervisor wrongfully suspended her, directing her to clock out two hours before the end of her scheduled shift; and 3) it omitted the several off-the-clock minutes she spent each day changing into and out of her work clothes and protective gear.

1.  Failure to Rely on the "TACS Hrs" Line of the Payroll Records

In its opening memorandum, the USPS maintained that Pirant earned 25 FMLA hours between December 3, 2001 and December 5, 2001, giving her a total of 1249.8 FMLA hours since December 6, 2000. After Pirant attacked both totals, the USPS revised its calculations, maintaining in its reply memorandum that she worked 24 FMLA hours during that three-day stretch in early December 2001 and 1248.8 FMLA hours for the 12 months preceding the commencement of her leave.

Pirant contends that the USPS's calculation in its opening memorandum was based on the "TACS Hrs" line of her payroll records, whereas the substitute calculation in the reply memorandum utilized the "Paid Hrs" line. Pirant argues that the USPS's initial use of her "TACS Hrs," which in this and other instances are higher than "Paid Hrs," creates a genuine issue of material fact as to whether "TACS Hrs" include FMLA hours not captured by "Paid Hrs" and therefore whether they should have been used to calculate her FMLA hours for every other payroll period.

The USPS tracked employee hours at the Busse facility through a time-clock system called the Time/Attendance Control System ("TACS"). Employees "clocked in" at the start of their shift and then "clocked out" at its end. The hours recorded by the TACS were then used by the USPS to determine an employee's compensable hours.

The USPS's payroll records tracked, among other things, employees' daily hours, as well as their hours for the biweekly payroll period. An employee's daily hours were subdivided into "Code 52" and "Code 53" hours, which as will be explained further below, loosely represent "regular pay" and "overtime pay" hours respectively. An employee's hours for the biweekly pay period were subdivided into "Paid Hrs" and "TACS Hrs," while each of those respective categories were then themselves subdivided into "Code 52" and "Code 53" hours. "Paid Hrs" and "TACS Hrs" are each a composite of the daily "Code 52" and "Code 53" hours. The dispute in this case, however, centers on whether "Paid Hrs" and "TACS Hrs" capture different hours, and if so, which line best reflects Pirant's FMLA hours.

The parties' briefs on this issue are not particularly illuminating, but it is nevertheless clear that "TACS Hrs," at least those reflected in Pirant's December 1-14 payroll records, do not include FMLA hours over and above those reflected in "Paid Hrs." USPS exhibit 1, page 002, shows that on Saturday, December 7, 2001, Pirant worked 8.53 total hours, .53 of which were overtime hours. The same page of that exhibit also shows that on Wednesday, December 11, 2001, Pirant worked a total of 8.51 hours, .51 of which were overtime hours. In light of the correlation between the fractions in the "Code 52" and "Code 53" entries on those dates, it is readily apparent that the daily "Code 52" represents a combination of both "regular pay" and "overtime pay" hours. It may in some instances include other types of compensable and non-compensable hours, but in these examples there is no question that it does not.

Having established that only "regular pay" and "overtime pay" hours are reflected in the daily "Code 52" and "Code 53" entries for December 8, 2001 through December 14, 2001, and thus that all of Pirant's possible FMLA hours for that period are accounted for, it is clear what

9

the respective "Code 52" and "Code 53" entries on the "Paid Hrs'" and "TACS Hrs'" lines represent. The 38.98 hours reflected in "Code 52" of the "Paid Hrs" line is the sum total of the daily "Code 52" entries for December 8, 2001 through December 14, 2001, minus the overtime hours. Thus, on the "Paid Hrs" line, the "Code 52" entry represents a "pure" total of "regular pay" hours, whereas the daily "Code 52" entries represent a combination of "regular pay" and "overtime pay" hours. On the "Paid Hrs" line, the 1.04 "overtime pay" hours are exclusively represented by "Code 53." Taken together, "Code 52" and "Code 53" of the "Paid Hrs" line show that Pirant worked 40.02 hours during that period and thus, earned 40.02 FMLA qualifying hours. That sum total is then reflected in "Code 52" of the "TACS Hrs" line, which like the daily "Code 52" entries thus represents a combination of "regular pay" and "overtime pay" hours. "Code 53" of the "TACS Hrs" line, just like "Code 53" of the "Paid Hrs" line, represents a "pure" total of "overtime pay" hours: 1.04. "Paid Hrs" and "TACS Hrs" are thus, at least in this example, merely different statements of the same hours.

The same is true with respect to the "Paid Hrs" and "TACS Hrs" reflected in the more relevant USPS exhibit 1, page 001. The payroll records shows that on Tuesday, December 4, 2001, Pirant worked one hour of overtime. As a consequence, the "Code 52" entry for that date shows "9.00" hours worked and the "Code 53" entry shows "1.00" hour of overtime. That one hour thus represents the difference between the 29.99 hours of "regular pay" hours reflected in "Code 52" of the "Paid Hrs" line and the 30.99 hours of "regular pay" plus "overtime pay" hours reflected in "Code 52" of the "TACS Hrs" line. In sum, subtracting the "6.99" hours Pirant worked after requesting leave on December 5, 2001, the payroll records undeniably show that

10

Pirant worked 24 hours between December 3 and December 5 and earned the same number of FMLA hours during that period.

In light of the foregoing, even if the USPS relied on the "TACS Hrs" line in its opening memorandum, that fact is insufficient to defeat summary judgment. Pirant cannot claim that she worked hours, FMLA qualifying or otherwise, other than those reflected in the daily "Code 52" and "Code 53" entries. As such, the daily "Code 52" and "Code 53" entries represent Pirant's total possible number of FMLA hours for those dates. Since those entries confirm that Pirant only worked a total of 24 hours between December 3, 2001 and December 5, 2001, the inference urged as a result of the USPS's apparent mistaken reliance on the "TACS Hrs" line is foreclosed.

2. Failure to Count Hours Lost Due to Wrongful Suspension

Pirant contends that the USPS failed to count two hours that she lost on October 5, 2001 when she was wrongfully suspended by her supervisor and directed to clock out early. In support of her position, Pirant cites *Ricco v. Potter*, 377 F.3d 599, 604-05 (6th Cir. 2004). In that case, the Sixth Circuit held that the hours-of-service requirement in the FMLA's definition of "eligible employee" included hours for which an unlawfully terminated employee was compensated pursuant to a make-whole arbitration award. The First Circuit disagrees with that broad interpretation, having previously held that the "eligible employee" definition only includes those hours that an employee actually worked. *See Plumley v. Southern Container, Inc.*, 303 F.3d 364 (1st Cir. 2002). This court need not resolve the dispute between the circuits, as there is no evidence in this case that Pirant's suspension was wrongful. Pirant's argument is based entirely on her own belief, which however honestly held is insufficient to warrant crediting her with the two hours she would have likely worked had she not been suspended.

### 3. Failure to Count Preliminary and Postliminary Activity Hours

Pirant next argues that she should be credited for the several off-the-clock minutes she spent each day before and after work changing into and out of her work clothes, which included a work shirt, apron, gloves, and shoes.

The FMLA's standards for calculating hours of service are derived from the FLSA, which the Portal-to-Portal Act, 29 U.S.C. § 254, modified to provide that employers need not compensate employees for:

> activities which are preliminary to or postliminary to [an employee's] principal activity or activities, which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities.

29 U.S.C. § 254. Ordinarily, changing and showering before and after work need not be compensated under the FLSA, though if it is "an integral and indispensable part of the principal activity of the employment" it must be. *Steiner v. Mitchell*, 350 U.S. 247, 76 S. Ct. 330, 100 L.Ed. 267 (1956). "An activity is integral to a principal activity if the activity is made necessary by the nature of the work performed, it fulfills mutual obligations between the employer and the employees, the activity directly benefits the employer in the operation of the business, and the activity is closely related to other duties performed by the employees." *Hiner v. Penn-Harris-Madison Sch. Corp.*, 256 F.Supp.2d 854, 859 (N.D.Ind 2003) (citations omitted).

Here, the principal activity Pirant was employed to perform was handling mail. There is no evidence that that activity touches upon the type of vital considerations of health, safety, or hygiene that would take Pirant's clothes changing activities out of the range of ordinary clothes changing and showering that need not be compensated under the FLSA. *Compare e.g., Steiner*, 350 U.S. at 247 (changing clothes and showering held to be an integral and indispensable part of

12

a principal work for battery factory workers who used toxic materials and were compelled by circumstances to change and shower in facilities the employer was required to provide by state law). Indeed, there is no evidence that handling mail involved contact with hazardous substances, nor that it required utilization of any type of unique protective or safety gear. Instead, at most Pirant was required to use ordinary gloves and an apron. Donning and doffing these items would have taken mere seconds and would have required little to no physical or mental exertion. *See Alvarez v. IBP, Inc.*, 339 F.3d 894, 903 (9th Cir. 2003) (time spent donning and doffing non-unique protective gear such as hard hats, ear plugs, frocks, safety goggles, and hair net was not compensable). As a consequence, Pirant was not entitled to compensation for these activities, and thus, the USPS was not required to include time spent performing them in calculating her FMLA hours.

### C. Pirant's Shortfall Cannot Be Excused As *De Minimis*

Having previously found that Pirant's payroll records for December 3, 2001 through December 5, 2001 show that she earned 24 FMLA hours (and not 25 as originally argued) during that period, Pirant worked a total of 1248.8 FMLA hours in the 12 months preceding the commencement of her leave on December 6, 2001. Pirant is thus 1.2 hours short of satisfying the 1,250 hours-of-service requirement for eligibility under the FMLA. Pirant argues, though, that this shortfall should be disregarded as *de minimis*.

Pirant's counsel, whose advocacy has been thorough and exemplary, does not cite and the court is unable to find a case specifically addressing whether the 1,250 hours-of-service requirement must be strictly applied in situations as close as this. The court's research reveals, however, that courts have strictly applied all of the FMLA's numerical requirements. *See*

*Warren* v. *United States Postal Service*, 147 Fed.Appx. 969 (Fed. Cir. 2005) (employee who worked 1,240.9 hours in the 12 months preceding the date of the commencement of her leave was not an "eligible employee" under the FMLA); *Grimsley* v. *Fiesta Salons, Inc.*, 2003 WL 117985 (E.D. Mich. Jan. 7, 2003) (employer who employed 49 employees within a 75-mile radius, one short of the FMLA's definitional requirement, was not a covered employer); *Babcock* v. *BellSouth Advertising and Publishing Corp.*, 348 F.3d 73, 77 (4th Cir. 2003) (employee who commenced her employment on June 1, 1999 was not eligible for FMLA leave on May 27, 2000, because she had not yet been employed for 12 months); *Corcino* v. *Banco Popular de Puerto Rico*, 200 F. Supp. 2d 507 (D.V.I. 2002) (employee who worked 1,197 hours in the applicable 12 month period not an "eligible employee"); *Aldrich* v. *Greg*, 200 F. Supp. 2d 784 (N.D. Ohio 2002) (employee who worked 1,152 hours ineligible under the FMLA). Although strict enforcement of the FMLA's definitional requirements results in the arbitrary exclusion of employees who would otherwise be eligible, these cases counsel against tinkering with the explicit parameters set by Congress. The FMLA's threshold numerical requirements represent Congress's careful balance of "the demands of the workplace with the needs of employees to take leave for eligible medical conditions and compelling reasons, " *Hukill* v. *Auto Care, Inc.*, 192 F.3d 437, 441 (4th Cir. 1999), and this court is in no position to second guess that informed and considered judgment. Accordingly, the court declines to excuse Pirant's 1.2 hour shortfall.

In light of the foregoing, Pirant did not qualify as an "eligible employee" as of the date of the commencement of her leave on December 6, 2001 due to her 1.2 hour shortfall. As a result, the USPS was entitled to terminate her employment due to the unscheduled absence.[2]

## ORDER

For the reasons stated above, the USPS's motion for summary judgment is granted (# 55). The USPS's motion to strike Pirant's jury demand (# 76) is therefore denied as moot. The case is terminated.

Enter: /s/ Joan Humphrey Lefkow

JOAN HUMPHREY LEFKOW
United States District Judge

Date: December 7, 2006

---

[2] As a final note, the court concurs with the USPS's assessment that, in the end, it is irrelevant whether Pirant was entitled to FMLA leave on December 6, 2001. Pirant was already subject to removal on December 6, 2001 due to her violation of the March 2001 "last chance agreement" entered into as a condition for her reinstatement following a nearly one-year suspension. That agreement required Pirant to maintain satisfactory attendance, which under the terms of the agreement meant no more than three unscheduled absences and no instances of "AWOL." As Pirant points out, the agreement's prohibition on "more than three unscheduled absences" is likely unenforceable, as it appears to abrogate Pirant's entitlement to FMLA leave. But even if that provision is void, the agreement's prohibition on absences without leave is not inconsistent with the FMLA and thus provides a legitimate basis for terminating Pirant's employment. Pirant concedes that she was AWOL on August 14, 2001 and again on September 25, 2001. Each of these absences, neither of which related to the arthritic condition that Pirant contends entitles her to FMLA leave for her other absences, is an independent violation of the agreement and a valid basis for her termination. Thus, even if Pirant were entitled to FMLA leave for her December 6, 2001 absence, she still would not be entitled to recover in this case because the USPS could have terminated her employment on January 4, 2002 due to either or both of these instances of AWOL. Accordingly, the USPS would still be entitled to summary judgment even if Pirant was entitled to FMLA leave on December 6, 2001.